**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x   NOT FOR PUBLICATION
In re:                                                      :
                                                            :   Chapter 13
                                                            :
      MAC TRUONG,                                           :   Case No. 09-11047
                                                            :
                                                            :
                        Debtor.                             :
------------------------------------------------------------x
```

**OPINION DISMISSING CHAPTER 13 CASE AND ENJOINING THE DEBTOR, HIS WIFE, AND ANY ENTITY ACTING ON THEIR BEHALF, FROM FILING, WITHOUT PRIOR COURT APPROVAL, (I) ANY MATTERS AGAINST CERTAIN PARTIES, AND (II) ANY FUTURE BANKRUPTCY PETITION**

*A P P E A R A N C E S:*

Mac Truong
*Debtor*
325 Broadway, Apt. 200
New York, NY 10007
*Pro Se*

Jeffrey L. Sapir
*Chapter 13 Trustee*
399 Knollwood Road
Suite 102
White Plains, NY 10603
By:     Jody S. Kava, Esq.

Mellinger, Sanders & Kartzman, LLC
*Attorneys for the Chapter 7 Trustee*
101 Gibralter Drive
Suite 2F
Morris Plains, NJ 07950
By:     Steven P. Kartzman
        Adam G. Brief

1

**MARTIN GLENN**
**United States Bankruptcy Judge**

## INTRODUCTION

The Bankruptcy Code exists to assist the class of "honest but unfortunate"[1] individuals who fall on hard times and require the "breathing space"[2] the Code's protections afford. Most individual debtors who seek bankruptcy protection are in that class and file for bankruptcy in the good-faith hope of emerging with a clean slate. There are exceptions, however. Occasionally, individuals file for bankruptcy for the wrong reasons and their cases may be dismissed as a result of bad-faith conduct. Even rarer is the "serial filer," the individual who files petition after petition in the hopes of forestalling an inevitable eviction or foreclosure, with successive petitions also dismissed for bad faith conduct, sometimes with sanctions against the debtor to deter future misconduct. This Court has never before considered barring any individual from seeking the protections of the Bankruptcy Code in the future. But the Court has never seen misconduct as egregious as that of Mac Truong (the "Debtor" or "Truong"), the chapter 13 debtor in this case. Stretching back for over a decade, Truong has serially and continually abused the judicial system in state and federal courts through his misleading, inappropriate, litigious and vexatious conduct. Indeed, Truong is currently a debtor in a chapter 7 bankruptcy case filed in the District of New Jersey, pending before Judge Norah Winfield. (Case No. 03-40283 (NLW).) Judge Winfield previously issued a so-called "filing injunction," barring Truong from filing a broad range of pleadings or new cases without her prior consent. (ECF Doc. #25, at Ex. F.) As explained further below,

---

[1]    *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007).
[2]    *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 532 (1984).

2

in seeking the relief requested in the current chapter 13 case in this court, Truong has violated the filing injunction entered by Judge Winfield. Also while the New Jersey chapter 7 case has been pending, Truong or a company he controls filed two separate bankruptcy cases in this court, both of which were dismissed by my colleague Judge James Peck. (Case No. 07-10696 (JMP), at ECF Doc. #32; Case No. 07-12194 (JMP), at ECF Doc. #22.) In dismissing the second case, Judge Peck also issued a filing injunction, but limited it to a one-year period. In filing the current case, Truong has persisted with the same type of bad faith conduct that led Judges Winfried and Peck to enter filing injunctions.

As explained in further detail below, the current chapter 13 case will be dismissed and an Injunction Order will be entered contemporaneously herewith. The Court hereby:

1. DISMISSES the Debtor's current chapter 13 petition;

2. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control, from filing any petition, motion or pleading in this court without this Court's prior approval, for a period of five years from the entry of the Injunction Order;

3. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control, from filing any complaint, motion or pleading against the standing chapter 13 trustee, Jeffrey L. Sapir, and his representatives or counsel, including specifically Jody S. Kava, Esq., in any court or tribunal, state or federal (or any state or federal administrative agency), without first seeking leave of this Court for a period of five years from the entry of the Injunction Order;

3

4. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control, from filing any complaint, motion or pleading against Steven P. Kartzman, and his representatives or counsel, in any court or tribunal, state or federal (or any state or federal administrative agency), without first seeking leave of Judge Norah Winfield, for a period of five years from the entry of the Order for a period of five years from the Entry of the Injunction Order; and

5. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control from filing any future bankruptcy petition, under any chapter, in any bankruptcy court without first obtaining leave of Judge Norah Winfield, until such time as Case No. 03-40283 in the files and records of the United States Bankruptcy Court for the District of New Jersey is closed.

## BACKGROUND

The long and tortuous background of this Debtor's various bankruptcies and disputes has been detailed numerous times in opinions by Judge Winfield, my colleague Judge Peck, and many others.[3] The Court repeats the facts of this case solely to the extent necessary for the purpose of rendering this opinion.

---

[3] A search of the Debtor's name in Westlaw yielded over 70 written judicial opinions related to his various lawsuits and bankruptcies. *See, e.g.*, 2009 WL 1803268 (3d Cir. 2009); 2009 WL 1803269 (3d Cir. 2009); 2009 WL 1269588 (2d Cir. 2009); 312 F. App'x 377 (2d Cir. 2009); 285 F. App'x 837 (3d Cir. 2008); 513 F.3d 91 (3d Cir. 2008); 2009 WL 2177324 (S.D.N.Y. July 17, 2009); 2009 WL 1562608 (S.D.N.Y. May 29, 2009); 388 B.R. 43 (S.D.N.Y. 2008); 2008 WL 58874 (D.N.J. Jan. 2, 2008); 2007 WL 1959259 (D.N.J. July 5, 2007); 2007 WL 1816048 (D.N.J. June 22, 2007); 2006 WL 3408573 (S.D.N.Y. Nov. 22, 2006); 2006 WL 2786878 (D.N.J. Sept. 26, 2006); 2003 WL 1345229 (S.D.N.Y. Mar. 19, 2003); 2000 WL 1239081 (S.D.N.Y. Aug. 31, 2000); 2009 WL 1024586 (Bankr. D.N.J. Apr. 1, 2009); 2009 WL 1024259 (Bankr. D.N.J. Feb. 27, 2009); 2008 WL 1776227 (Bankr. S.D.N.Y. Apr. 14, 2008); 2008 WL 442292 (Bankr. D.N.J. Feb. 14, 2008); 2008 WL 199462 (Bankr. D.N.J. Jan. 18, 2008); 2007 WL 708874 (Bankr. D.N.J. Mar. 5, 2007); 2006 WL 4452984 (Bankr. D.N.J. May 3, 2006); 259 B.R. 264 (Bankr. D.N.J. 2001).

Mac Truong and his wife filed a chapter 7 petition in New Jersey in 2003.[4] The case was assigned to Judge Winfield; Steven Kartzman was appointed as the chapter 7 trustee of his estate. Among the assets of that estate was the Debtor's home, located in Teaneck, New Jersey (the "Property"). At the time Kartzman was appointed, he substituted himself as plaintiff in an adversary proceeding commenced by Broadwhite Associates, a judgment creditor of the Debtor, against the Debtor and his family to set aside a series of fraudulent transfers of the Property to revest title of the Property in the estate. After years of litigation, Kartzman obtained a series of summary judgment orders unwinding the transfers and revesting title to the Property in the estate. Kartzman then obtained an order evicting the Debtor, and authorizing a sale of the Property. Judge Winfield ruled repeatedly that the Property is an asset of the chapter 7 bankruptcy estate in New Jersey.

During the course of the adversary proceeding, in an effort to stall his inevitable eviction, the Debtor engaged in a stunning pattern of vexatious, frivolous, and abusive litigation, refusing to comply with numerous court orders and prompting numerous filing injunctions. Among the dilatory tactics employed between 2004 and early 2006: five motions to dismiss the adversary proceeding filed over a 15-month period (all denied); three motions to vacate orders entered in the adversary proceeding (two denied, one pending since 2005); a motion for a stay of the adversary proceeding (denied); a motion to vacate an order in the main bankruptcy proceeding (denied); three motions to remove or sanction Kartzman (one denied, two pending since 2006); one motion to dismiss the bankruptcy (denied); one motion in district court to sanction Kartzman (pending since

---

[4] That was the Debtor's earliest bankruptcy for purposes of this opinion and order. He had filed an earlier chapter 11 case in New Jersey in 2000.

5

2005); three motions to reopen or reconsider prior orders (all denied); a motion to sanction Kartzman in the Third Circuit (denied); and a motion to reconsider a Third Circuit order (denied).[5]  (ECF Doc. #25, at Ex. A.)  The result of all of this was a filing injunction entered by Judge Winfield in March 2006 prohibiting the Debtor and his wife from filing any pleading in the main bankruptcy case or adversary proceeding without first obtaining leave of the court.

Thereafter, in another effort to delay eviction, the Debtor and his wife filed a motion to convert their case to a case under chapter 13.  Judge Winfield denied that motion as well, holding that the "bad faith conduct makes the Truongs ineligible for the benefits of chapter 13."  *In re Truong*, 2007 WL 708874, at *4 (Bankr. D.N.J. Mar. 5, 2007) (citing *Maramma*, 549 U.S. at 374).  In the meantime, the Debtor caused a wholly-owned entity, To-Viet-Dao ("TVD") to file a chapter 13 case in this district.  That case was assigned to Judge Peck.  TVD—a shell corporation owned by the Debtor— is in the chain of title of the Property in what Judge Winfield found to be a series of fraudulent conveyances.  After Judge Peck entered an order to show cause why the automatic stay

---

[5]  The Debtor's conduct has inspired strong language from other federal and state judges:  "[W]e note that Truong has consistently spurned court orders.  And the bulk of his voluminous filings appear to be no more than attempts to re-litigate issues already decided against him as a tactical move to prolong his bankruptcy proceedings seemingly ad infinitum."  *In re Mactruong*, slip copy, 2009 WL 1803269, at *2 (3d Cir. June 25, 2009) (per curiam); "Mac Truong is a vexatious litigant who has continued to file numerous repetitive, meritless and frivolous actions despite past warnings by several courts."  *Vishipco Line v. Charles Schwav & Co.*, 2003 WL 1345229, at *9 (S.D.N.Y. Mar. 19, 2003) (Stein, J.); "There has been an unfortunate history of repetitive, vexatious and frivolous litigation by the Truongs in various courts, including this one."  *In re Truong*, 2009 WL 1024586 (Bankr. D.N.J. Apr. 1, 2009) (Winfield, J.); "[Y]ou [Truong] are not a member of the class of honest but unfortunate debtors that bankruptcy laws were enacted to protect.  You are, sir, as far as I can tell, a schemer; somebody who is trying to use the system for your own advantage.  I will not tolerate it . . . ."  *In re Truong*, No. 07-12194, Doc. #22 at 45 (Bankr. S.D.N.Y. July 24, 2007) (Peck, J.); "[Truong] is undeterred in frivolous and contemptuous conduct.  Disbarment is the appropriate sanction."  *In re Truong*, 800 N.Y.S.2d 12, 16 (1st Dep't 2005) (per curiam); "The record clearly establishes [Truong]'s continual disrespect for the courts and his adversaries, and that his unprofessional, vexatious behavior is undeterred by monetary sanctions or by court-ordered injunctions.  After a careful review of the record, we find that [Truong]'s contemptuous behavior poses an immediate threat to the public interest."  *In re Truong*, 768 N.Y.S.2d 450, 453 (1st Dep't 2003) (per curiam).

6

applied to the Property (and after the case's conversion to chapter 11, since only an individual is eligible to file a chapter 13 case), the Debtor voluntarily dismissed the TVD bankruptcy and agreed to a one-year nationwide filing ban on TVD bankruptcy cases. Judge Peck concluded that he had been misled by the Debtor and that the case was as "clear a case of bankruptcy abuse" as he had ever seen. (Case No. 07-10696, ECF Doc. #32, at 18.)

The very next day the Debtor filed a personal chapter 13 bankruptcy in this jurisdiction. The case was again assigned to Judge Peck. Judge Peck immediately scheduled a status conference and ordered the Debtor to testify as to why the filing was not in bad faith. After hearing the Debtor's testimony, Judge Peck concluded that the Debtor filed the chapter 13 case in bad faith. Judge Peck dismissed the case and enjoined the Debtor from future filings without prior permission of the Court for one year. (Case No. 07-12194, ECF Doc. #22, at 45-46.) Judge Peck also refused to allow the Debtor to evade Judge Winfield's rulings in New Jersey, holding that issues surrounding the Property, which had already been fully litigated before Judge Winfield, should remain before her.[6] *Id.*

Following Judge Peck's ruling, Kartzman requested an expansion of the 2006 filing injunction from Judge Winfield. In February 2008, Judge Winfield granted the request in a careful and detailed opinion, issuing a nationwide permanent injunction against the Debtor, his wife, and any entity acting on their behalf, from filing anything in any court against the chapter 7 trustee (Kartzman) or his professionals without further

---

[6]   The Debtor's maneuvering following Judge Peck's ruling is illustrative of his behavior over the past six years. The Debtor appealed the dismissal, had his appeal dismissed, moved to vacate the dismissal, and subsequently appealed Judge Peck's denial of his motion to vacate the dismissal. That appeal—two years after the initial dismissal—is still pending.

7

leave of the court. (ECF Doc. #25, at Ex. F.) About that time, pursuant to Judge Winfield's order, Kartzman sold the Property, generating substantial proceeds after the satisfaction of liens. According to Kartzman, the Debtor's litigious conduct, combined with satisfying the Debtor's other claimants, has eliminated any possibility of a recovery for the Debtor.[7]

The Debtor filed the instant chapter 13 petition here on March 9, 2009. Since the Debtor still had a pending chapter 7 open in New Jersey, the Court held a hearing to determine whether the Debtor was eligible to file another bankruptcy petition here. After a hearing on the matter and a request by the Court for further briefing, the chapter 13 trustee moved to dismiss the case as a bad faith filing, arguing also that the new case violates the "single-estate" rule. The chapter 13 trustee also sought to enjoin the Debtor from filing any further motions, pleadings or actions against the chapter 13 trustee or the professionals representing him, without prior permission from the Court. The Debtor meanwhile moved and then cross-moved for the following declaratory relief:[8]

> (1) a declaration that the chapter 13 trustee acted in concert with Kartzman to convert the proceeds of the sale of the Debtor's home;
>
> (2) removal of the chapter 13 trustee's attorney, Jody Kava, for misconduct;
>
> (3) a declaration that Kartzman acted in concert with the chapter 13 trustee to convert the proceeds of the sale of the Debtor's home;[9]

---

[7] The Debtor challenges that conclusion, arguing without any proof that Kartzman's contention is false, and that Kartzman conspired with the chapter 13 trustee here to convert the proceeds of the sale of his home for their own benefit. Truong's current chapter 13 case was clearly filed in an effort to get this Court, rather than Judge Winfield where the matter clearly belongs, to determine whether the supposed surplus from the sale of the Property remains property of the New Jersey chapter 7 estate.

[8] The Debtor actually had two motions for declaratory relief. For brevity's sake, the Court combines the various requests for relief into one exhaustive list.

[9] Yes, this appears to be the same relief as request for relief (1). The Court merely repeats the Debtor's requests for relief as they appear in his motion papers.

8

...

(4) a declaration that all assets of his chapter 7 estate are assets of his chapter 13 estate;

(5) a declaration that Kartzman violated his fiduciary duty to fully disclose and report the full amount of his assets held by him as chapter 7 trustee;

(6) a declaration that Kartzman violated his duty of promptly turning over the chapter 7 assets to the chapter 13 estate;

(7) a declaration that Kartzman can file a proof of claim against the chapter 13 estate for any fees for the administration of the chapter 7 estate;

(8) denying the motion to dismiss;

(9) a declaration that his chapter 7 case was voluntarily abandoned or withdrawn;

(10) converting his chapter 7 case to one under chapter 13;

(11) granting leave *nunc pro tunc* to the Debtor to convert his chapter 7 case to a chapter 13 case; and

(12) other relief as the Court deems just.

Kartzman filed a letter-brief in response to the Debtor's motions and joined in the chapter 13 trustee's motion to dismiss.

In response to Kartzman's letter-brief, the Debtor filed another flurry of papers with the Court. The Debtor supplied the Court with a letter he sent to the chapter 13 trustee in which the Debtor "suggests" to the chapter 13 trustee that he withdraw his motion to dismiss this chapter 13 case or else the Debtor will tie him up in appeals and litigation for years. The same letter threatens action against the chapter 13 trustee's counsel in this case.[10]

---

[10]   Truong's threats against the chapter 13 trustee and his counsel border on extortion. His previous scorched-earth tactics against the chapter 7 trustee—including multiple criminal complaints, all dismissed—demonstrate that Truong's threats must be taken seriously. Therefore, the relief granted by this Court includes an injunction barring Truong from taking *any* action against the chapter 13 trustee or his counsel without prior permission from this Court.

9

Truong also initiated an adversary proceeding in this Court against the same defendants he had previously filed adversary proceedings against in New Jersey and who he had also previously sued in state and federal courts in New York. (Adv. Proc. 09-01427.)[11] He then filed another motion requesting that the Court hold the motion to dismiss the chapter 13 case in abeyance until the adversary proceeding is adjudicated.[12] The Debtor argued that because the adversary proceeding seeks $4.5 million in damages, approximately eight times the amount of the sale proceeds of his former home to which he believes he is entitled, he is therefore eight times more interested in the adversary proceeding. The Court denied the request for an adjournment of the motion to dismiss in a written order. The Debtor then filed yet another brief reiterating the same arguments he had made before.

The Court held a hearing on August 19, 2009. The Debtor, Kartzman, and the chapter 13 trustee, by his counsel, appeared. The Court permitted all parties to argue their motions and submit whatever evidence they believed supported their positions. At the conclusion of the hearing, the Court took the matter under submission. After the hearing, the Debtor then filed yet another brief, largely reiterating the same points he had made on numerous earlier occasions.

---

[11] It appears that the adversary proceeding is barred by prior filing injunctions entered by the state and federal courts, *res judicata* and collateral estoppel, and possibly applicable statutes of limitation. The Court is dismissing the main case as a bad faith filing. As a result, the adversary proceeding will be dismissed for lack of jurisdiction. The Court therefore does not reach whether the Debtor violated any other injunctions by initiating it, or whether any other defenses would apply.

[12] He also reiterated the declaratory relief requests described above.

**DISCUSSION**

A.  **Dismissal of the Chapter 13 Petition**

Section 1325(a)(7) provides that the court shall confirm a plan if proposed in good faith.  Section 1307(c) provides that a court may dismiss a case if a plan is not confirmed.  Courts have also held that while the Code does not define "bad faith," courts have the power to dismiss chapter 13 cases that were filed in bad faith.  *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373 (2007) ("Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause,'" in § 1307(c)); *In re Casse*, 198 F.3d 327, 341-42 (2d Cir. 1999) (holding that it was not an abuse of discretion to dismiss chapter 13 petition as *void ab initio* when it was filed in bad faith); *In re Shankman*, 382 B.R. 591 (Bankr. E.D.N.Y. 2008).

The Debtor argues that there is no evidence of his bad faith in filing the petition.  The Court disagrees.  Under Federal Rule of Evidence 201, the Court may take judicial notice of public filings.  *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("[W]e can take judicial notice of this Court's files as well as those of the district court.").  Specifically, the Court notes the plethora of unnecessary filings in this case and the Debtor's history for vexatious and abusive conduct towards Kartzman and the Debtor's other adversaries in the numerous other cases spawned by the Debtor's litigious behavior.  The Debtor was disbarred as an attorney licensed to practice in New York for the same type of behavior.  Numerous other courts have entered filing injunctions against the Debtor in an apparently futile effort to curb his abuses.  The Debtor's penchant for re-litigating issues over and over again further supports a finding of bad faith.  It is clear

11

from the very long record that the Debtor filed the instant chapter 13 petition in an effort to skirt the New Jersey bankruptcy court's jurisdiction once again and to abuse the bankruptcy system for his own advantage. As explained below, in seeking relief against Kartzman in this Court, Truong has also violated the nationwide filing injunction entered by Judge Winfield.

But even if there was no evidence of bad faith in the very filing of the petition, case law indicates that the Debtor may not maintain two pending bankruptcies at the same time in these circumstances pursuant to the "single-estate" rule. *See Shankman*, 382 B.R. at 595 ("[T]he majority of courts, including courts in this district, have held that a debtor may only have one case pending at any given time."). Even those courts that have not adopted the "single-estate" rule only permit simultaneous bankruptcies with respect to different assets and different debts. *Id.* ("Even under the minority view, however, a Chapter 13 case may not be filed to obtain control of an asset which is simultaneously being administered in a chapter 7 case.") (citing *In re Kosenka*, 104 B.R. 40 (Bankr. N.D. Ind. 1989)). Here, the Debtor conceded that Judge Winfield ruled that the Property was property of the chapter 7 estate. The sale proceeds from the Property are therefore undoubtedly property of the New Jersey estate as well. *See* 11 U.S.C. § 541(a)(6) (property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate . . . ."). Nonetheless, the Debtor seeks to have this Court determine that the sale proceeds are assets of the chapter 13 estate. Consistent with *Shankman* and the cases it relies upon, the Debtor may not maintain this case while his

12

still-open chapter 7 case in New Jersey is still pending.[13] Therefore, the chapter 13 petition must be dismissed.

### B. The Court Lacks Authority to Convert a Chapter 7 Case Pending in Another Jurisdiction to a Chapter 13 Case Here

The Debtor requests that rather than dismissing his chapter 13 petition, this Court should convert his chapter 7 case in New Jersey to one under chapter 13 here, or, in the alternative, deem his chapter 7 case in New Jersey voluntarily withdrawn or abandoned and maintain the chapter 13 petition here. This request is denied for lack of jurisdiction and for bad faith. First, this Court cannot convert a case commenced in another jurisdiction, because it does not have jurisdiction over the chapter 7 case in New Jersey. *See* 28 U.S.C. § 1334(e)(1) (granting the district court in which a bankruptcy case is commenced jurisdiction over "all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate"). Since the case that was commenced in 2003 is still pending in bankruptcy court in New Jersey, and since the Property and the sale proceeds are part of that estate subject to that court's jurisdiction, this Court has no authority to convert that case or to in any way administer the Property.

Second, the Supreme Court has held that conversion under § 706(a) is not absolute, especially where there is evidence that the Debtor is seeking to convert his case in bad faith. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007). There, the court held that even though § 706(a) is couched in terms of a mandatory right of conversion, if a debtor would not qualify for chapter 13 for bad-faith conduct—if he "is not a member

---

[13] The Debtor also tries to argue that because he received his discharge in 2004, he can maintain two simultaneous bankruptcies. But the purpose of the single-estate rule is the efficient administration of estate assets, something that continues even after a discharge until a case is formally closed. The Debtor offers no authority why the single-estate rule does not apply with equal force to a post-discharge, pre-dismissal debtor. In any event, as discussed above, this chapter 13 filing was clearly done in bad faith, so the Debtor cannot maintain this case in any event.

13

of the class of honest but unfortunate debtors"—he is not entitled to conversion. *Id.* at 374. For the same reasons that the Court dismisses the chapter 13 case, the Court would deny the Debtor's request to convert his existing chapter 7 case to a chapter 13 case even if it had jurisdiction to do so, which it does not.

In any event, this is precisely the relief Judges Winfield and Peck already denied in prior opinions and orders. Those orders are entitled to preclusive effect. The Court DENIES the Debtor's requests to have his chapter 7 petition either converted to chapter 13 or have his chapter 7 petition be deemed withdrawn or abandoned.

### C. The Debtor's Other Requests for Relief Are Meritless

The Debtor's other sundry requests for declaratory relief either are similarly meritless or blatantly violate Judge Winfield's filing injunction. Judge Winfield's injunction prohibited the Debtor from filing any motion or pleading against Kartzman, or any professionals representing him, without her prior approval. All of the declaratory relief the Debtor requests against Kartzman—that he violated his fiduciary obligations, that he be required to file a proof of claim in this action, that he be found to have converted the Debtor's funds—violate that injunction. The Court will not even consider a motion that is brought in violation of a federal court order.

In any event, the Debtor does not raise a scintilla of evidence supporting his allegation that Kartzman and the chapter 13 trustee are in cahoots to convert the proceeds from the court-authorized sale of the Property. Rather, as described above, the proceeds of that sale are property of the chapter 7 estate, subject to Kartzman's administration and oversight by Judge Winfield. The Court also lacks jurisdiction to adjudicate the allegation that Kartzman violated his fiduciary obligations to the chapter 7 estate. As with the Debtor's other allegations concerning the handling of the chapter 7 estate, any

14

arguments concerning that estate should properly be raised with Judge Winfield. The Court has considered all of the Debtor's other arguments and found them similarly meritless.

### D. Enjoining Future Motion Practice and Bankruptcy Filings

A federal court has well-recognized authority to restrict the activity of abusive litigants. *See Abdul-Akbar v. Watson*, 901 F.2d 329, 332-33 (3d Cir. 1990); *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989); *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). In deciding whether to issue a filing injunction, a court must determine "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).

When Judge Peck issued a filing injunction against the Debtor for a period of one year, he noted that the Debtor's "consistency is apparent. [He] will stop at nothing to game the bankruptcy system. It's stopping here and now." (Case No. 07-12194, ECF Doc. #22, at 43.) That was two years ago. Since then, the Debtor has engaged in numerous additional and frivolous appeals, litigation, motions to vacate, motions to reconsider, sanctions motions, attempted criminal prosecutions, and countless other abusive legal maneuverings, including the current chapter 13 case and the adversary proceeding filed in this Court. Since Judge Peck commented that Truong will stop at nothing to game the bankruptcy system, Truong has had additional filing injunctions entered against him. Truong's three bankruptcy petitions in this Court show that he will go to great lengths to avoid the jurisdiction of the New Jersey bankruptcy court that continues to have jurisdiction over his still-open chapter 7 case. As a result, the filing

15

injunction the Court is entering in this case (as described in the Injunction Order being entered contemporaneously with this Opinion) requires, for a period of five years from the date of the Order, (a) prior approval of *this* Court with respect to (i) any future filings in this Court, or (ii) any pleadings, actions, suits, proceedings, complaints (administrative, civil or criminal), in any state or federal court, against the chapter 13 trustee or his representative or counsel in this case. Additionally, until such time as the New Jersey chapter 7 case is closed by that court, Truong must obtain prior approval of Judge Winfield before (1) filing any paper or pleading in any state or federal court seeking relief against the chapter 7 trustee or property of the chapter 7 estate, or (2) filing any new bankruptcy case in any bankruptcy court in any district.

## CONCLUSION

The Court wishes it could say with respect to Truong's conduct that "it's stopping here and now," but Truong's history shows that there is only so much any court can do. The Court fully expects that the Debtor will appeal this result, as is his right and his wont. Nevertheless, the Court enters this Opinion and the contemporaneous Injunction Order in the perhaps-futile hope that it will curb Truong's future misconduct. If Truong violates the injunction, and the matter is properly brought before me, the Court will deal with Truong in an appropriate manner to the fullest extent permitted by law.

**IT IS SO ORDERED.**

Dated:   September 3, 2009
         New York, New York

                                        **/s/Martin Glenn**
                                        MARTIN GLENN
                                        United States Bankruptcy Judge

16