UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x    NOT FOR PUBLICATION
In re:                                                      :
                                                            :
      MAC TRUONG,                                    :    Chapter 13
                                                            :    Case No. 09-11047 (MG) (closed)
                    Debtor.                              :
------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO
REOPEN HIS DISMISSED CHAPTER 13 CASE**

**MARTIN GLENN**
**United States Bankruptcy Judge**

## I.    INTRODUCTION

      The pro se debtor in this closed case, Mac Truong ("Truong" or the "Debtor"), is no stranger to this Court. The last time he was before the Court his chapter 13 case was dismissed in the hopes] that "with respect to Truong's conduct that it's stopping here and now." *In re Mac Truong*, No. 09-11047, 2009 WL 292926, at *7 (Bankr. S.D.N.Y. Sept. 3, 2009). In addition to dismissing the case, the Court entered an Injunction Order barring Truong "from filing any petition, motion or pleading in this court without this Court's prior approval, for a period of five years from the entry of this Order." (ECF Doc. # 37, Sept. 3, 2009 (the "2009 Injunction").) Judging from Truong's most recent correspondence with the Court, best described as a motion to reopen the dismissed chapter 13 case (*see* ECF Doc. # 46, June 2, 2011 (the "Motion")), the dismissal and 2009 Injunction has not had the desired effect. In the Motion, Truong seeks substantially the same relief he sought and was denied in the now-closed chapter 13 case. For the reasons explained below, the Motion is denied.

1

## II.    BACKGROUND

### A.    Truong's Lengthy History in the Bankruptcy Courts

Troung has been a fixture of the state and federal judicial system for over a decade[1] and the bankruptcy courts have been no exception.  Truong and his wife filed a chapter 7 petition in New Jersey in 2003, which is still pending.[2]  (Case No. 03-40283 (NLW).)  The case was assigned to Judge Novalyn L. Winfield and Steven Kartzman ("Kartzman") was appointed as chapter 7 trustee.  The assets of the estate included the Debtor's home, located in Teaneck, New Jersey (the "Property").  At the time Kartzman was appointed, he substituted himself as plaintiff in an adversary proceeding commenced by Broadwhite Associates, a judgment creditor of the Debtor, against the Debtor and his family to set aside a series of fraudulent transfers of the Property to revest title of the Property in the estate.  After years of litigation, Kartzman obtained a series of summary judgment orders unwinding the transfers and revesting title to the Property in the estate.  Kartzman then obtained an order evicting Truong, and authorizing a sale of the Property.  Judge Winfield ruled repeatedly that the Property is an asset of the chapter 7 bankruptcy estate in New Jersey.

---

[1]    A search of the Debtor's name in Westlaw yielded over 70 written judicial opinions related to his various lawsuits and bankruptcies.  *See, e.g.*, No. 08-3365, 2009 WL 1803268 (3d Cir. 2009); No. 08-3365, 2009 WL 1803269 (3d Cir. 2009); No. 08-2872-bk, 2009 WL 1269588 (2d Cir. 2009); 312 F. App'x 377 (2d Cir. 2009); 285 F. App'x 837 (3d Cir. 2008); 513 F.3d 91 (3d Cir. 2008); 07 Civ. 7070 (LTS) (KNF), 2009 WL 2177324 (S.D.N.Y. July 17, 2009); 07 Civ. 7070 (LTS) (KNF), 2009 WL 1562608 (S.D.N.Y. May 29, 2009); 388 B.R. 43 (S.D.N.Y. 2008); 06-2247 (GEB), 2008 WL 58874 (D.N.J. Jan. 2, 2008); Civ. No. 06-5511 (GEB), 2007 WL 1959259 (D.N.J. July 5, 2007); Civ. No. 06-3286 (GEB), 2007 WL 1816048 (D.N.J. June 22, 2007); No. 06 Civ. 1431 (SHS), 2006 WL 3408573 (S.D.N.Y. Nov. 22, 2006); Civ. No. 06-3464 (DRD), 2006 WL 2786878 (D.N.J. Sept. 26, 2006); Nos. 02 Civ. 7823 SHS, 02 Civ. 7846 SHS, 02 Civ. 7877 SHS, 02 Civ. 7915 SHS, 02 Civ. 7928 SHS, 02 Civ. 7929 SHS, 2003 WL 1345229 (S.D.N.Y. Mar. 19, 2003); No. 00 Civ. 3618 (SHS), 2000 WL 1239081 (S.D.N.Y. Aug. 31, 2000); No. 03-40283 (NLW), 2009 WL 1024586 (Bankr. D.N.J. Apr. 1, 2009); No. 03-40283, 2009 WL 1024259 (Bankr. D.N.J. Feb. 27, 2009); Nos. 07-12194 (JMP), 07-10696 (JMP), 2008 WL 1776227 (Bankr. S.D.N.Y. Apr. 14, 2008); Adv. No. 03-2681, 2008 WL 442292 (Bankr. D.N.J. Feb. 14, 2008); No. 03-40283, 2008 WL 199462 (Bankr. D.N.J. Jan. 18, 2008); No. 03-40283, 2007 WL 708874 (Bankr. D.N.J. Mar. 5, 2007); Adv. No. 03-2493, 2006 WL 4452984 (Bankr. D.N.J. May 3, 2006); 259 B.R. 264 (Bankr. D.N.J. 2001).

[2]    Truong had filed an earlier chapter 11 case in New Jersey in 2000.

During the course of the adversary proceeding, in an effort to stall his inevitable eviction, Truong engaged in a stunning pattern of vexatious, frivolous, and abusive litigation, refusing to comply with numerous court orders and prompting numerous filing injunctions.[3] Truong's misbehavior, while seemingly extraordinary, is his *modus operandi*.[4] Fed up with Truong's antics, Judge Winfield entered a filing injunction in March of 2006 prohibiting Truong and his wife from filing any pleading in the main bankruptcy case or adversary proceeding without first obtaining leave of the court.

Rather than allowing the case to continue in an expeditious manner after the injunction was entered, Truong tried to stall the case again, this time by filing a motion to convert the case to chapter 13. The motion was denied by Judge Winfield, who held that "bad faith conduct

---

[3] The following are some of the dilatory tactics employed by Truong between 2004 and early 2006:

> five motions to dismiss the adversary proceeding filed over a 15-month period (all denied); three motions to vacate orders entered in the adversary proceeding (two denied, one pending since 2005); a motion for a stay of the adversary proceeding (denied); a motion to vacate an order in the main bankruptcy proceeding (denied); three motions to remove or sanction Kartzman (one denied, two pending since 2006); one motion to dismiss the bankruptcy (denied); one motion in district court to sanction Kartzman (pending since 2005); three motions to reopen or reconsider prior orders (all denied); a motion to sanction Kartzman in the Third Circuit (denied); and a motion to reconsider a Third Circuit order (denied).

*See In re Mac Truong*, 2009 WL 292926, at *5–6.

[4] Truong's conduct has inspired strong language from other federal and state judges: "[W]e note that Truong has consistently spurned court orders. And the bulk of his voluminous filings appear to be no more than attempts to re-litigate issues already decided against him as a tactical move to prolong his bankruptcy proceedings seemingly ad infinitum." *In re Mac Truong*, slip copy, No. 08-3364, 2009 WL 1803269, at *2 (3d Cir. June 25, 2009) (per curiam); "Mac Truong is a vexatious litigant who has continued to file numerous repetitive, meritless and frivolous actions despite past warnings by several courts." *Vishipco Line v. Charles Schwab & Co.*, Nos. 02 Civ.7823 SHS, 02 Civ.7846 SHS, 02 Civ.7877 SHS, 02 Civ. 7915 SHS, 02 Civ.7928 SHS, 02 Civ.7929 SHS, 2003 WL 1345229, at *9 (S.D.N.Y. Mar. 19, 2003) (Stein, J.); "There has been an unfortunate history of repetitive, vexatious and frivolous litigation by the Truongs in various courts, including this one." *In re Truong*, No. 03-40283, 2009 WL 1024586 (Bankr. D.N.J. Apr. 1, 2009) (Winfield, J.); "[Y]ou [Truong] are not a member of the class of honest but unfortunate debtors that bankruptcy laws were enacted to protect. You are, sir, as far as I can tell, a schemer; somebody who is trying to use the system for your own advantage. I will not tolerate it . . . ." *In re Truong*, No. 07-12194, ECF Doc. # 22 at 45 (Bankr. S.D.N.Y. July 24, 2007) (Peck, J.); "[Truong] is undeterred in frivolous and contemptuous conduct. Disbarment is the appropriate sanction." *In re Truong*, 800 N.Y.S.2d 12, 16 (1st Dep't 2005) (per curiam); "The record clearly establishes [Truong]'s continual disrespect for the courts and his adversaries, and that his unprofessional, vexatious behavior is undeterred by monetary sanctions or by court-ordered injunctions. After a careful review of the record, we find that [Truong]'s contemptuous behavior poses an immediate threat to the public interest." *In re Truong*, 768 N.Y.S.2d 450, 453 (1st Dep't 2003) (per curiam).

makes the Truongs ineligible for the benefits of chapter 13." *In re Truong*, No. 03-40283, 2007 WL 708874, at *4 (Bankr. D.N.J. Mar. 5, 2007) (citing *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007)).

Shortly after Judge Winfield denied the motion, Truong turned his eyes on this Court and caused a wholly-owned entity, To-Viet-Dao ("TVD"), to file a chapter 13 case in this district. The case was assigned to my colleague Judge Peck. The filing was yet another attempt to stall foreclosure as TVD—a shell corporation owned by Truong—was in the chain of title of the Property in what Judge Winfield found to be a series of fraudulent conveyances. After Judge Peck entered an order to show cause why the automatic stay applied to the Property (and after the case's conversion to chapter 11, since only an individual is eligible to file a chapter 13 case), the Debtor voluntarily dismissed the TVD bankruptcy and agreed to a one-year nationwide filing ban on TVD bankruptcy cases. Judge Peck concluded Truong had misled him and that the case was as "clear a case of bankruptcy abuse" as he had ever seen. (Case No. 07-10696, ECF Doc. # 32, at 18.)

One day later Truong filed a personal chapter 13 bankruptcy case in this jurisdiction. The case was again assigned to Judge Peck who immediately scheduled a status conference and ordered Truong to testify why the filing was not in bad faith. After hearing Truong's testimony, Judge Peck concluded the chapter 13 case was filed in bad faith. Judge Peck dismissed the case and enjoined Truong from future filings without prior permission of the Court for one year.[5] (Case No. 07-12194, ECF Doc. # 22, at 45–46.) Judge Peck also refused to allow the Debtor to

---

[5] Truong's maneuvering following Judge Peck's ruling is illustrative of his behavior over the past six years. Truong appealed the dismissal, had his appeal dismissed, moved to vacate the dismissal, and subsequently appealed Judge Peck's denial of his motion to vacate the dismissal. That appeal was pending for almost three years until Judge George Daniels of the District Court for the Southern District of New York dismissed it for failure to prosecute. (Case No. 07-12194, ECF Doc. #45.)

4

circumvent Judge Winfield's rulings in New Jersey, holding that issues surrounding the Property, which had already been fully litigated before Judge Winfield, should remain before her. (*Id.*)

Following Judge Peck's ruling, Kartzman requested an expansion of the 2006 filing injunction from Judge Winfield. In February 2008, Judge Winfield granted the request, issuing a nationwide permanent injunction against Truong, his wife, and any entity acting on their behalf, from filing anything in any court against the chapter 7 trustee (Kartzman) or his professionals without further leave of the court. (ECF Doc. # 25, at Ex. F.) About that time, pursuant to Judge Winfield's order, Kartzman sold the Property, generating substantial proceeds after the satisfaction of liens. According to Kartzman, the Truong's litigious conduct, combined with satisfying the Debtor's other claimants, had eliminated any possibility of a recovery for Truong.

Truong filed a new case under chapter 13 in this Court on March 9, 2009. (Case No. 09-11047 (MG).) The case was assigned to me. At that time Truong's chapter 7 case before Judge Winfield in New Jersey was still open. As one of its first orders of business, the Court held a hearing to determine whether Truong was eligible to file another bankruptcy petition. After a hearing on the matter and a request by the Court for further briefing, the chapter 13 trustee moved to dismiss the case as a bad faith filing, arguing also that the new case violates the "single-estate" rule.[6] Additionally, the chapter 13 trustee sought to enjoin the Debtor from filing any further motions, pleadings or actions against the chapter 13 trustee or the professionals representing him, without prior permission from the Court. In response and in line with his typical behavior, Truong counterclaimed requesting a number of items of relief.[7] Kartzman filed

---

[6] *See infra*, section III.

[7] Truong requested: (1) a declaration that the chapter 13 trustee acted in concert with Kartzman to convert the proceeds of the sale of the Debtor's home; (2) removal of the chapter 13 trustee's attorney, Jody Kava, for misconduct; (3) a declaration that Kartzman acted in concert with the chapter 13 trustee to convert the proceeds of the sale of the Debtor's home; (4) a declaration that all assets of his chapter 7 estate are assets of his chapter 13 estate; (5) a declaration that Kartzman violated his fiduciary duty to fully disclose and report the full amount of his

5

a letter-brief in response to the Debtor's motions and joined in the chapter 13 trustee's motion to dismiss.

In response to Kartzman's letter-brief, Truong filed another series of papers with the Court. Of particular note in the papers was the letter Truong sent to the chapter 13 trustee in which Truong "suggested" to the chapter 13 trustee that he withdraw his motion to dismiss the chapter 13 case or else Truong will tie him up in appeals and litigation for years. The same letter threatened action against the chapter 13 trustee's counsel in the case.

During his time litigating the motion to dismiss, Truong also initiated an adversary proceeding against the same defendants he had previously filed adversary proceedings against in New Jersey and had also previously sued in state and federal courts in New York. (Adv. Proc. 09-01427.) Truong then filed another motion requesting that the Court hold the motion to dismiss the chapter 13 case in abeyance until the adversary proceeding is adjudicated. The Court denied the request for an adjournment of the motion to dismiss in a written order. In response, Truong filed another brief reiterating the same arguments made previously.

The Court held a hearing on August 19, 2009. Truong, Kartzman, and the chapter 13 trustee, by his counsel, appeared. The Court permitted all parties to argue their motions and submit whatever evidence they believed supported their positions. At the conclusion of the hearing, the Court took the matter under submission. After the hearing Truong filed yet another brief largely reiterating the same points he had made on numerous earlier occasions.

---

assets held by him as chapter 7 trustee; (6) a declaration that Kartzman violated his duty of promptly turning over the chapter 7 assets to the chapter 13 estate; (7) a declaration that Kartzman can file a proof of claim against the chapter 13 estate for any fees for the administration of the chapter 7 estate; (8) denying the motion to dismiss; (9) a declaration that his chapter 7 case was voluntarily abandoned or withdrawn; (10) converting his chapter 7 case to one under chapter 13; (11) granting leave *nunc pro tunc* to the Debtor to convert his chapter 7 case to a chapter 13 case; and (12) other relief as the Court deems just.

On September 3, 2009, the Court entered an opinion and order dismissing the case on the grounds that it was filed in bad faith and violated the "single-estate" rule. (ECF Doc. # 36.) In addition, the Court also entered a filing injunction with the following language:

1. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control, from filing any petition, motion or pleading in this court without this Court's prior approval, for a period of five years from the entry of the Injunction Order;

2. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control, from filing any complaint, motion or pleading against the standing chapter 13 trustee, Jeffrey L. Sapir, and his representatives or counsel, including specifically Jody S. Kava, Esq., in any court or tribunal, state or federal (or any state or federal administrative agency), without first seeking leave of this Court for a period of five years from the entry of the Injunction Order;

3. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control, from filing any complaint, motion or pleading against Steven P. Kartzman, and his representatives or counsel, in any court or tribunal, state or federal (or any state or federal administrative agency), without first seeking leave of Judge Norah Winfield, for a period of five years from the entry of the Order for a period of five years from the Entry of this Order; and

4. ENJOINS the Debtor, his wife Maryse Mac-Truong, and any entity acting on their behalf or under their control from filing any future bankruptcy petition, under any chapter, in any bankruptcy court without first obtaining leave of Judge Norah Winfield, until such time as Case No. 03-40283 in the files and records of the United States Bankruptcy Court for the District of New Jersey is closed.

(ECF Doc. # 37, at 1–2.)

Truong then appealed the Court's decision to dismiss the chapter 13 case. On December 1, 2009, Judge Robert W. Sweet of the District Court for the Southern District of New York entered an order dismissing the appeal on the grounds that no brief had been filed and no request for additional time had been received. (ECF Doc. # 42.)

7

In the time between Judge Sweet's dismissal of his appeal and the Court's receipt of this Motion, Truong has been busy litigating his cause under chapter 7 before Judge Winfield. Astonishingly, the chapter 7 case has been pending for over seven and a half years at this point.

Truong has also pressed his accusations that Kartzman is abusing his position as chapter 7 trustee in order to convert and steal for himself the value of the Property. Truong has written letters to United States Senators Charles Schumer and Frank Lautenberg repeating the allegations against Kartzman and alleging that Judge Winfield was acting in concert with Kartzman to "convert in our names $571,000.00." (ECF Doc. #s 47–48.)

### B. Truong's Motion to Reopen His Chapter 13 Case

On June 1, 2011, the Court received the Motion from Truong titled "Request for Leave to File MOTION pursuant to this Court's September 3 2009 Injunction Order Limiting Filing and/or this Court's February 14 2008 Filing Injunction."[8] The Motion asks the court for an order:

> (1) Declaring any bankruptcy filing commenced by Truong prior to September, 3, 2009 has not been deemed null and void *ab initio* but dismissed in their entirety on the merits.
>
> (2) Declaring that by issuing the September 3, 2009 dismissal order the Court did not grant an exception to the total dismissal and general filing injunction by authorizing Truong to convert, reconvert, commence, reinstate, or continue any suspended or pending proceeding in U.S. Bankruptcy Court.
>
> (3) Declaring that the September 3, 2009 dismissal order did not direct that Truong's chapter 13 be converted or reconverted to a Chapter 7 case and transferred to Judge Winfield.
>
> (4) Declaring that the September 3, 2009 dismissal order did not direct that the U.S. Bankruptcy Court in either New York or New Jersey

---

[8] Copies of the Motion were also sent to Bankruptcy Judge Winfield, Eric Holder, Attorney General for the United States, the Chief Judge for the Third Circuit Court of Appeals, District Court Judge Susan D. Wigenton, the U.S. Trustee's office, U.S. Senators Charles E. Schumer, Kristen Gillibrand, Robert Menedez, and Frank Lautenberg, Chapter 7 Trustee Steven P. Kartzman, and Chapter 13 Trustee Jeffrey L. Sapir.

8

      continue to retain subject matter jurisdiction over Truong's cases and Chapter 7 Trustee Steven P. Kartzman continues to preside over the administration of the bankruptcy estate.

(5) Declaring that the Bankruptcy court for the Southern District of New York and the Bankruptcy Court for New Jersey are one in the same court, have absolutely the same subject-matter jurisdiction, and that the orders issued by one court are valid and enforceable in the other court on the merits unless expressly vacated or reversed by the other court.

(6) Declaring that, until a new order is issued, the Court's September 3, 2009 dismissal and filing injunction continues to apply to enjoin Truong or his wife from commencing or continuing any bankruptcy proceeding in any U.S. Bankruptcy Court.

(7) Enjoining any party, including Chapter 7 Trustee Steven P. Kartzman, from acting in the name of Truong and creating a false appearance that the bankruptcy estate still exists and still requires the administration of Chapter 7 Trustee Stephen P. Kartzman.

(8) OR, in the alternative of (1) though (7), an order vacating the September 3, 2009 filing injunction of this Court and the May 24, 2010 filing injunction of Judge Winfield so that Truong can seek relief under the Bankruptcy Code against improper actions taken in his name by any parties or entities including Steven P. Kartzman.

(9) Granting other and further relief as the Court may deem just and proper under the circumstances.

(Motion at 6–7.)

      The Motion also contains a section setting forth the legal basis for the relief sought. In what has become a common argument reiterated to the Court many times, Truong alleges that the chapter 7 trustee, Kartzman, is stealing from the bankruptcy estate rather than acting as a proper trustee. In somewhat of a new twist to the allegations, Truong alleges that the 2009 Injunction entered by this Court bars Kartzman from continuing to administer the chapter 7 bankruptcy estate and Kartzman has ignored and violated the injunction in order to continue stealing from the estate. Truong, however, misreads the text of the 2009 Injunction. Truong asserts that the

9

injunction bars him and his wife from continuing *or commencing* any bankruptcy proceeding in any bankruptcy court. However, the 2009 Injunction never references the continuation of a bankruptcy proceeding; the 2009 Injunction only bars Truong and his wife from "from filing any petition, motion or pleading" in the Bankruptcy Court for the Southern District of New York. (ECF Doc. # 36, at 6.)

### III.    DISCUSSION

In the convoluted Motion that Truong has filed in this Court, it is clear that Truong is again seeking the same relief previously sought previously denied by the Court when dismissing the chapter 13 case and entering the 2009 Injunction. Truong does not have a case pending before this Court and the 2009 Injunction remains in effect. Therefore, the Court will treat the Motion as an application to reopen the last chapter 13 case. Furthermore, the Court may treat motions to modify or enforce orders in a closed bankruptcy case as motions to reopen the case. *Matter of Seats*, 537 F.2d 1176, 1177 (4th Cir. 1976) ("Though inartfully styled, we will regard Hotel Supply's petition as one to reopen the estate … in order that the discharge order might be modified.");[9] *In re Searles*, 70 B.R. 266, 272 (D.R.I. 1987) (finding that a creditor's motion for clarification and enforcement of an order entered in the closed bankruptcy case was a "sufficient substitute for a motion to reopen.") As Truong's Motion asks the Court to both enforce and modify its September 3, 2009 order dismissing the case and entering the filing injunction (Motion at 6–7), the Court will treat the Motion as an application to reopen the closed chapter 13 case.

---

[9]    *Matter of Seats* was decided under the Bankruptcy Act of 1938, which has since been replaced by the current Bankruptcy Code pursuant to the Bankruptcy Reform Act of 1978. Under the Bankruptcy Act of 1938, the reopening of cases was governed by Rule 515 which provided that "[a] case may be reopened on application by the bankrupt or other person to administer assets, to accord relief to the bankrupt, or for other good cause." This language is almost identical to section 350(b) of the current Bankruptcy Code. *See* 11 U.S.C. § 350(b)

10

Section 350 of the Bankruptcy Code governs the reopening of cases and states "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). However, "a case cannot be reopened unless it was closed pursuant to section 350(a) after it has been administered; [t]herefore, a dismissed case [can] not be reopened under section 350(b)." 3 COLLIER ON BANKRUPTCY ¶ 350.03 (16th ed. rev. 2011). *See also Armel Laminates, Inc, v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.),* 699 F.2d 963, 965 (9th Cir. 1982) ("[A] case cannot be reopened unless it has been closed. An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing."); *In re Singleton*, 358 B.R. 253, 257 (Dist. Ct. S. Car. 2006) ("[T]he record shows that Singleton's case was dismissed, not closed, at the time Singleton filed her motion. Therefore, the court finds that the Bankruptcy Court erred when it purported to 'reopen' the dismissed case pursuant to § 350(b)."); *In re King*, 214 B.R. 334, 336 (Bankr. W.D. Tenn. 1997) (stating that "a case which is dismissed is not one which is fully administered and, thus, may not be reopened under § 350(b).") Therefore, even if the Court wished to reopen the case, it does not have the authority to do so under section 350(b) as the case was dismissed and not closed after being fully administered.

Even if reopening the case were possible under section 350(b), doing so would violate the "single-estate" rule as Truong's chapter 7 case before Judge Winfield is still pending. "The majority of courts, including courts in this district, have held that a debtor may only have one case pending at any given time." *In re Shankman*, 382 B.R. 591, 595 (Bankr. E.D.N.Y. 2008). Even those courts that have not adopted the "single-estate" rule only permit simultaneous bankruptcies with respect to different assets and different debts. *Id.* ("Even under the minority view, however, a Chapter 13 case may not be filed to obtain control of an asset which is

11

simultaneously being administered in a Chapter 7 case.") (citing *In re Kosenka*, 104 B.R. 40, 51 (Bankr. N.D. Ind. 1989)). Accordingly, for this second reason, Truong's chapter 13 case cannot be reopened.

## IV. CONCLUSION

The Bankruptcy Code exists to assist the class of "honest but unfortunate"[10] individuals who fall on hard times and require the "breathing space"[11] the Code's protections afford. Truong is not one of these individuals. The current Motion is another example of the frivolous extremes Truong will resort to in an attempt to delay and frustrate the administration of his case. Accordingly, the Court denies Truong's Motion to reopen his dismissed chapter 13 case.

**IT IS SO ORDERED.**

DATED: July 15, 2011
New York, New York

                                           **/s/Martin Glenn**
                                               MARTIN GLENN
                                  United States Bankruptcy Judge

---

[10] *Maramma*, 549 U.S. at 374.

[11] *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 532 (1984).